IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BRUCE WHITE,                                )          CV. NO. 09-00571 DAE-KSC
                                            )
                 Plaintiff,                 )
                                            )
        vs.                                 )
                                            )
INDYMAC BANK, FSB;                          )
ONEWEST BANK, FSB; DOES 1                   )
THROUGH 20, inclusive,                      )
                                            )
                 Defendants.                )
_____          )


ORDER: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND (2) DENYING PLAINTIFF'S MOTION FOR
<u>SUMMARY JUDGMENT</u>

            Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.[1]  After reviewing the parties' cross motions for

summary judgment and the supporting and opposing memoranda, the Court

**GRANTS** Defendant's Motion for Summary Judgment (Doc. # 209) and **DENIES**

Plaintiff's Motion for Summary Judgment (Doc. # 208).

_____

            [1]The Court finds this matter suitable for disposition without a hearing, in
part, because this Court previously heard oral argument from both parties in
connection with Defendant's prior Motion for Summary Judgment.  That Motion
raised largely the same issues as those presently before the Court.

BACKGROUND

I.    <u>Factual Background</u>

This action stems from the foreclosure of Plaintiff Bruce White's real property designated as Lot 53B Nahiku Homesteads, located at Hana, Maui, Hawaii, 96713 (TMK: (2) 1-2-003-059) ("Subject Property").  On January 30, 2006, Plaintiff entered into a loan transaction by executing an Adjustable Rate Note for the principal amount of $1,000,000.00, which was secured by a Mortgage recorded on the same day in the Bureau of Conveyances as Document No. 2006-021984.  ("Note," Doc. # 121-2; "Mortgage," Doc. # 121-3.)  Defendant IndyMac Bank, FSB ("IndyMac") is listed as the originating lender on the Mortgage. (Mortgage at 2.)  Pursuant to the terms of the Note and Mortgage, Plaintiff was obligated to make scheduled payments of principal and/or interest beginning on March 1, 2006.  (Note at 1–2; Mortgage at 4–5.)  After approximately 16 months, Plaintiff stopped making payments on the loan as a result of financial hardship. ("White Depo.," Doc. # 210, Ex. 4 at 60; Doc. # 121 ¶¶ 19–20.)

On or about March 1, 2006, IndyMac entered into a Pooling and Servicing Agreement ("PSA") with Deutsche Bank National Trust Company ("Deutsche Bank") whereby IndyMac transferred all right, title, and interest in and to the Note and Mortgage at issue to Deutsche Bank.  ("PSA," Doc. # 218, Ex. 7

2

§ 2.01.)  Plaintiff's Mortgage was securitized and held by Deutsche bank as trustee on behalf of the certificate holders of the trust.  (Id.)

On December 20, 2007, IndyMac filed a foreclosure action in the Circuit Court of the Second Circuit, State of Hawaii.  (Doc. # 210-3.)  On December 1, 2008, the state court issued an Order finding White in default under the Note and Mortgage and entered a Judgment for the foreclosure of the Subject Property.  (Doc. # 210-5.)  The state court judgment was never appealed or subject to a motion for reconsideration.  (White Depo. at 73; Doc. # 210-11.)

On July 11, 2008, IndyMac Bank, FSB was closed by the Office of Thrift Supervision and went into receivership with the Federal Deposit Insurance Corporation ("FDIC").  (Doc. # 35-5.)  On March 19, 2009, OneWest Bank, FSB purchased the servicing rights to the Subject Loan from the FDIC.  ("Boyle Decl.," Doc. # 210-2 ¶ 3.)  On or about December 2009, Plaintiff allegedly received a letter from OneWest stating that an auction date was set for the Subject Property. (SAC ¶ 43.)

II.     The Instant Action

Plaintiff commenced this action on December 4, 2009 against IndyMac Bank, FSB ("IndyMac"), OneWest Bank, FSB ("OneWest"), and Does 1 through 20, (collectively, "Defendants") alleging: (1) unfair trade practices

involving non compliance under 15 U.S.C. § 1802, et seq. (Count 1); (2) failure to obtain signed loan documents in violation of 15 U.S.C. § 1601, et seq., and Title 12, Regulation Z Part 226, et seq. (Count 2); (3) failure to give three day cooling period in violation of 15 U.S.C. § 1601, et seq., and Regulation Z (Count 3); (4) failure to give conspicuous writings in violation of 15 U.S.C. § 1601, et seq., and Title 12 of the Federal Regulations, Sec. 226.18 (Count 4); and (5) unfair and deceptive acts and practices in violation of Hawaii Revised Statutes ("HRS") Chapter 480 (Count 5).  Plaintiff also requested the following: (1) a declaratory judgment regarding fraud and rescission and common law damages (Count 6); (2) injunctive relief (Count 7); and (3) punitive damages (Count 8).

On April 18, 2011, this Court issued an Order: (1) Sua Sponte Dismissing Plaintiff's Complaint; (2) Denying as Moot OneWest's Motion for Summary Judgment; (3) Denying as Moot Plaintiff's Motion for Summary Judgment; and (4) Denying as Moot OneWest's Second Motion for Summary Judgment.  (Doc. # 97.)  Pursuant to that Order, the Court dismissed the entire Complaint, but granted Plaintiff leave to amend (1) the Truth in Lending Act ("TILA") claims asserted in Counts 1-4 of the Complaint to the extent Plaintiff seeks damages and (2) the HRS Chapter 480 unfair and deceptive acts and practices claim.  (Id.)  The Court also noted that Plaintiff had previously attempted

4

to amend his Complaint (Docs. ## 23–24) and was denied that opportunity for failure to comply with Court deadlines after being given a two-week extension of time to file a motion for leave to amend. For this reason, the Court found that:

> [T]his Order in no way grants Plaintiff leave to add claims, allegations or Defendants to those articulated in the Complaint. Rather, an amended complaint shall only constitute a formal representation of the allegations and claims that remain. Failure to comply with this Order may result in dismissal of this action.

(Id. at 24.)

On May 18, 2011, Plaintiff filed a First Amended Complaint ("FAC") asserting the following claims: (1) deceptive and unfair business practices - civil RICO; (2) deceptive and unfair business practices - pattern of racketeering activity; (3) deceptive and unfair business practices - violations of the Fair Debt Collection Practices Act; (4) deceptive and unfair business practices - fraud; and (5) deceptive and unfair business practices.

On July 12, 2011, Magistrate Judge Kevin S.C. Chang issued an Order Granting Defendant OneWest Bank's Motion to Strike the FAC on the ground that Plaintiff violated this Court's April 18, 2011 Order by adding to the FAC a host of claims not raised in the original Complaint. (Doc. # 118.) However, in an abundance of caution, and because Plaintiff is proceeding pro se, Judge Chang gave him "one final opportunity to properly amend his complaint."

(Id. at 5.)  With regard to filing a Second Amended Complaint, Plaintiff was

specifically advised as follows:

> [T]he only claims that may be raised are TILA claims seeking
> damages and HRS Chapter 480 claims . . . Plaintiff is prohibited from
> asserting any claims that the Court has not expressly authorized,
> including but not limited to a) allegations of RICO violations
> (particularly because he relies on federal criminal statutes) or any
> other criminal violations b) allegations related to the Fair Debt
> Collection Practices Act c) allegations of fraud or d) allegations of
> unjust enrichment.
>
> Plaintiff is cautioned that his failure to comply with this order and
> with Judge Ezra's Order will result in the dismissal of this action. The
> Court has extended Plaintiff many courtesies and opportunities during
> the course of this protracted litigation, and the Court will not allow
> Plaintiff to continue to impede the judicious and expeditious
> resolution of this action.

(Id. at 6–7.)

On July 26, 2011, Plaintiff filed a Second Amended Complaint

asserting a single cause of action for Unfair and Deceptive Acts or Practices

("UDAP") pursuant to HRS Chapter 480-2 and HRS 480-13 against Defendant

OneWest.[2]  ("SAC," Doc. # 121.)  Plaintiff also added a host of new allegations to

support that claim.  (Id.)  In his prayer for relief, Plaintiff seeks: (1) damages, (2)

---

[2]To date, Defendant IndyMac has not made an appearance in this action.
Although Plaintiff continues to identify IndyMac as a defendant, he does not allege
any claims against Indymac in the SAC.  The sole cause of action in the SAC is
alleged against OneWest only.  (See SAC ¶ 74.)

an order striking the state court foreclosure judgment, (3) a permanent injunction enjoining OneWest Bank from selling Plaintiff's property without proof of a valid claim against his property before the court, (4) reconveyance of the property to Plaintiff, and (5) an injunction enjoining OneWest Bank from selling <u>any</u> currently seized Hawaiian private property until proving a valid claim supported by original documented proof before the court.[3]  (<u>Id.</u>)

On November 30, 2011, Defendant OneWest Bank filed a Motion for Summary Judgment, or in the alternative, for Dismissal of this Action With Prejudice.  (Doc. # 150 at 30.)  At the hearing on Defendant's Motion, Plaintiff stated that he had filed some discovery motions and there remained outstanding discovery issues that needed to be resolved.  Therefore, on January 18, 2012, this Court issued an Order denying Defendant's Summary Judgment Motion without prejudice to Defendant's right to renew its Motion after all outstanding discovery issues had been resolved.  (Doc. # 188.)

On January 18, 2012, Magistrate Judge Chang issued an Order striking Plaintiff's discovery motions on the ground that the motions were untimely.  Judge Chang explained as follows:

--------

[3]In his Motion for Summary Judgment, Plaintiff asks that the Court drop or disregard his requests to reverse the state court judgment and to reconvey his property.  (Doc. # 298 at 28.)

> Although Plaintiff recently sought relief from the dispositive motions, non-dispositive motions, and discovery deadlines, the Court denied his request. As such, the foregoing motions are untimely and they should not have been filed without leave of court. Of note, the Court previously denied Plaintiff's motion for investigation of alleged ethics violations. Moreover, even if the Court were to allow Plaintiff to proceed with his motion to compel, the motion would be denied. Plaintiff has not certified compliance with Local Rule 37.1 and/or Federal Rule of Civil Procedure 37. The Court has, on at least one previous occasion, advised Plaintiff of this requirement but he continues to violate the rules. Plaintiff's pro se status does not excuse his compliance with all applicable rules and/or statutes.

(Doc. # 196 (internal citations omitted).)  At a scheduling conference held on January 20, 2012, Judge Chang advised Plaintiff that he had a right to appeal the Order denying his discovery motions.  Plaintiff never appealed Judge Chang's Order and the time for appeal has since expired.  <u>See</u> Local Rule 74.1.  There are no outstanding discovery issues remaining in this action.

Pursuant to the Third Amended Rule 16 Scheduling Order issued on January 20, 2012, the parties were given an opportunity to file a Motion for Summary Judgment or Renewed Motion for Summary Judgment by no later than February 10, 2012.  (Doc. # 205.)  On February 10, 2012, the parties filed cross Motions for Summary Judgment.[4]  (Docs. ## 208, 209.)  On March 2, 2012,

---

[4]Plaintiff failed to submit a Concise Statement of Material Facts in Support of his Motion for Summary Judgment in violation of Federal Rule of Civil Procedure 56 and Local Rule 56.1(a).

Defendant filed an Opposition to Plaintiff's Motion for Summary Judgment. (Doc. # 219.) On March 12, 2012, Plaintiff filed an untimely Opposition to Defendant's Motion and Defendant filed a Reply in support of its Motion on March 16, 2012. (Docs. ## 222, 224.) On March 19, 2012, Plaintiff filed an untimely Response to Defendant's Concise Statement of Facts in Opposition to Plaintiff's Motion. (Doc. # 227.)

## STANDARD OF REVIEW

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  Porter,

419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties.").  "[A]t least some 'significant probative evidence'" must be

produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine issue of material fact." <u>Addisu</u>, 198 F.3d at 1134. Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002) (citing <u>Kennedy v. Applause, Inc.</u>, 90 F.3d 1477, 1481 (9th Cir. 1996)). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." <u>Rivera v. Nat'l R.R. Passenger Corp.</u>, 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. <u>Porter</u>, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. <u>Id.</u>; <u>see also</u> <u>Nelson v. City of Davis</u>, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted). However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts

that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec.

Serv., 809 F.2d at 631.

DISCUSSION

As a preliminary matter, Defendant asserts that Plaintiff has violated

this Court's prior Orders by adding numerous new allegations to the SAC that were

not in the original Complaint.[5]  Defendant requests that the Court strike or ignore

these new allegations for purposes of ruling on the instant Motion.  However, the

Court need not reach this issue because it does not affect the outcome on the

instant Motions for Summary Judgment.  In other words, even were the Court to

consider these new allegations, Defendant would still prevail on its Motion for the

reasons discussed below.

In the SAC, Plaintiff alleges that Defendant OneWest and Does 1-20

engaged in unfair and deceptive business practices in violation of sections 480-2

and 480-13 of the Hawaii Revised Statutes.  (SAC ¶ 74.)  This claim appears to be

based on his allegations that IndyMac fraudulently obtained a foreclosure

judgment against him and that OneWest wrongfully held itself out to be the lender

---

[5]The Court notes that while Plaintiff did in fact add new allegations to the
SAC, he did not add any new causes of action.  Plaintiff merely added new
jurisdictional allegations and allegations to further support his UDAP claim, which
is a cause of action that the Court expressly permitted him to re-allege.  (See Docs.
## 97, 118.)

and holder in due course of the Note for the purpose of seizing the Subject Property pursuant to the fraudulently obtained foreclosure judgment. (SAC ¶ 90.) Based on these allegations, Plaintiff seeks damages and an injunction enjoining the foreclosure sale of the Subject Property. (SAC ¶¶ 100(a)–(c), (e).)

The Hawaii Unfair and Deceptive Trade Practice Act states that "any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter . . . [m]ay sue for damages sustained by the person," including treble damages, and "[m]ay bring proceedings to enjoin the unlawful practice." Haw. Rev. Stat. § 480-13(a)(1), (2). Section 480-13 of the Hawaii Revised Statues "establishes four essential elements: (1) a violation of chapter 480; (2) injury to plaintiff's business or property resulting from such violation; (3) proof of the amount of damages; and (4) a showing that the action is in the public interest or that the defendant is a merchant." Davis v. Four Seasons Hotel Ltd., 228 P.3d 303, 335 (Haw. 2010).

Section 480-2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce is unlawful." Id. § 480-2(a). A practice is unfair when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Balthazar v. Verizon Hawaii, Inc., 123 P.3d

13

194, 202 (Haw. 2005). An act is deceptive when it has "the capacity or tendency to mislead or deceive." Courbat v. Dahana Ranch, Inc., 141 P.3d 427, 434 (Haw. 2006).

This Court concludes that Plaintiff has not shown that Defendant engaged in any unfair or deceptive acts or practices, nor has he submitted any evidence to raise a triable issue of fact as to this issue. In other words, while the allegations in the SAC might amount to conduct that has "the capacity or tendency to mislead or deceive," Plaintiff cannot simply rest on his allegations at this stage of the proceedings. Balthazar, 123 P.3d at 202. To defeat summary judgment, Plaintiff must set forth "significant probative evidence" tending to support his position and he has failed to do so here. T.W. Elec. Serv., 809 F.2d at 630.

The first part of Plaintiff's UDAP claim appears to be based on the allegation that IndyMac fraudulently obtained a foreclosure judgment by falsely representing to the state court that it was the lender and holder of the Note and Mortgage even though the loan had been securitized well before IndyMac filed the foreclosure action. (SAC ¶¶ 21, 26, 40.) However, Plaintiff has not proffered any evidence to support his contention that IndyMac made any misrepresentations to the state court. Based on IndyMac's Complaint to Foreclose the Mortgage, it appears that IndyMac represented to the state court that it was the originating

lender on the loan.  (Doc. # 142-2 ¶¶ 4–5.)  This representation is verified by the

Mortgage and Note, which indicate that IndyMac was the originating lender on the

loan.  (Doc. # 142-2 Exs. B, C.)  Since Plaintiff has not proffered any evidence to

the contrary, the Court concludes that the undisputed facts establish that IndyMac

did not make any alleged misrepresentations to the state court.

      The Court also rejects Plaintiff's contention that IndyMac lacked the

authority to initiate foreclosure proceedings after the securitization of the loan.[6]

The argument that parties lose their interest in a loan when it is assigned to a

securitization trust or REMIC has been rejected by numerous courts.  See, e.g.,

Hafiz v. Greenpoint Mortgage Funding, Inc., 652 F. Supp. 2d 1039, 1043 (N.D.

Cal. 2009) (argument that "all defendants lost their power of sale pursuant to the

deed of trust when the original promissory note was assigned to a trust pool" is

"both unsupported and incorrect"); Reyes v. GMAC Mortgage LLC, No. 11–0100,

2011 WL 1322775, at *2–3 (D. Nev. Apr. 5, 2011) ("securitization merely creates

---

[6]The Court also notes that this claim may be barred by the doctrine of res
judicata.  See Albano v. Norwest Fin. Hawaii, Inc., 244 F.3d 1061 (9th Cir. 2001)
(applying Hawaii law and holding that a state court foreclosure judgment may bar
federal claims that "could have been litigated in the foreclosure action"); Bremer v.
Weeks, 85 P.3d 150, 160 (2004) (observing that under Hawaii law "[t]he judgment
of a court of competent jurisdiction . . . precludes the relitigation, not only of the
issues which were actually litigated in the first action, but also of all grounds of
claim and defense which might have been properly litigated in the first action but
were not litigated or decided").

'a separate contract, distinct from [p]laintiffs['] debt obligations' under the note and does not change the relationship of the parties in any way") (citing Commonwealth Prop. Advocates, LLC v. First Horizon Home Loan Corp., No. 2:10–cv–375, 2010 WL 4788209, at *4 (D. Utah Nov. 16, 2010) (emphasis added) (quoting Larota–Florez v. Goldman Sachs Mortgage Co., 719 F. Supp. 2d 636, 642 (E.D. Va. 2010)); see also Rodenhurst v. Bank of Am., 773 F. Supp. 2d 886, 898 (D. Haw. 2011) (rejecting the claim that securitization of a loan somehow renders the note and mortgage unenforceable); Jones v. Countrywide Homeloan, 2011 U.S. Dist. LEXIS 64647, at *14 (E.D. Cal. June 17, 2011) (stating that securitization gives "investors an interest in the cash flow from the promissory notes that are the underlying assets" in the investment vehicle and that "[i]t does not follow that any of the other entitlements of the lender of the Deeds of Trust, including the power to declare default, are transferred or lost because of the transfer or sale of the cash flow due from the mortgage").  Plaintiff has not cited any cases that have reached a different conclusion.  Accordingly, insofar as Plaintiff's UDAP claim is based on this contention, the Court concludes that it lacks merit.

Moreover, the record shows that IndyMac retained the authority to institute foreclosure proceedings in its own name after the securitization of the loan.  The Prospectus for IndyMac Residential Mortgage-Backed Trust Series

16

2006-L1 ("Prospectus") states that "Indymac bank, as servicer, with respect to the certificates, will be limited to the servicer's contractual servicing obligations under the pooling and servicing agreement."  (Doc. # 222-4.)  The Pooling and Service Agreement ("PSA") between IndyMac and Deutsche Bank identifies IndyMac as the "Servicer" and provides that it "shall service and administer the Mortgage Loans on behalf of the Trust and in the best interests of and for the benefit of the Certificateholders and the Certificate Insurer . . . ."  (PSA §§ 1.01, 3.01.)  The PSA further provides that "the Servicer <u>in its own name</u> or in the name of a Sub-Servicer is hereby authorized and empowered by the Trustee, when the Servicer believes it appropriate in its best judgment in accordance with the servicing standards set forth above, . . . <u>to institute foreclosure proceedings</u> or obtain a deed-in-lieu of foreclosure so as to convert the ownership of such properties . . . ."  (<u>Id.</u> § 3.01 (emphasis added).)  Plaintiff has not offered any evidence to suggest that IndyMac was not the servicer of the loan or that it lacked the authority to institute foreclosure proceedings.  Therefore, based on the undisputed facts set forth in the record, the Court concludes that IndyMac did not perpetrate any kind of fraud on the Court by instituting foreclosure proceedings in its capacity as servicer.

The second part of Plaintiff's UDAP claim is based on his allegation that OneWest did not obtain a beneficial interest in Plaintiff's loan when it

acquired IndyMac's assets. (SAC ¶ 84.) According to Plaintiff, OneWest is "purposely, knowingly, unjustly, and deceptively posing as the holder in due course, holder of a valid claim, in possession of standing, and as the lender for the purpose of unjustly and deceptively seizing [the Subject Property]." (SAC ¶ 90.) However, the undisputed facts do not support this claim.

Contrary to Plaintiff's contention, the record plainly establishes that OneWest is the servicer of Plaintiff's loan. Charles Boyle, the Vice President of OneWest, states in his declaration that OneWest purchased the servicing rights to Plaintiff's loan from the FDIC on or about March 19, 2009.[7] (Doc. # 210-2 ¶ 3.) This fact is verified by the Serving Business Asset Purchasing Agreement ("APA") between the FDIC, as receiver for IndyMac, and OneWest, whereby the FDIC transferred IndyMac's servicing rights to OneWest. (PSA § 2.01; "APA," Doc. # 218-5 § 2.01.) These servicing rights include the right to foreclose on the Subject Property. (PSA § 3.01; APA § 10.03 (indicating that the servicing of the Mortgage Loans "include[s] the conduct of foreclosure").)

The record also demonstrates that OneWest expressly disclosed to Plaintiff in writing that it was the Servicer of the loan and acting on behalf of

---

[7]Plaintiff's evidentiary objection to Charles Boyle's Declaration lacks merit and is therefore overruled.

"securitization trust LOT LOAN 2006-L1 03-24-06, DEUTSCHE BANK

NATIONAL TRUST COMPANY, as Trustee/Master Servicer."  (SAC at Ex. D.)

Plaintiff also acknowledges that OneWest described itself as "a debt collector" in a

letter dated August 19, 2010.  (SAC ¶¶ 46–47.)  Additionally, Plaintiff was unable

to identify any unfair or deceptive acts or practices engaged in by OneWest when

asked to do so at his deposition.  (White Depo. at 67–68.)  Indeed, Plaintiff has not

offered any evidence to suggest that OneWest has posed as the lender or holder in

due course of the loan.  The Court therefore concludes that the undisputed facts in

the record establish that OneWest did not make any alleged misrepresentations

regarding its purported interest in the loan.  Porter, 419 F.3d  at 891.

        In reaching this conclusion, the Court notes that documents suggesting

that OneWest does not have a beneficial interest in the loan are consistent with

OneWest's representation that it is merely the servicer of the loan.  As explained

by the Ninth Circuit in Cervantes v. Countrywide Home Loans Inc., 656 F.3d

1034, 1038–39 (9th Cir. 2011):

> After a borrower takes out a home loan, the original lender may sell all or a
> portion of its beneficial interest in the loan and change loan servicers. The
> owner of the beneficial interest is entitled to repayment
> of the loan. . . . The servicer of the loan collects payments from the
> borrower, sends payments to the lender, and handles administrative aspects
> of the loan.

Here, the record as well as Plaintiff's own allegations establish that OneWest is the

servicer of the loan that's handling administrative aspects of the loan on behalf of

the securitization trust. (Doc. # 210-2 ¶ 3; PSA § 3.01; Doc. # 218-5 § 2.01; SAC

¶¶ 21, 46–47, Ex. D.) Plaintiff's argument that OneWest is wrongfully taking steps

to foreclose on the Subject Property without a beneficial interest in the Note lacks

merit because, as the servicer of the loan on behalf of a trust, OneWest is not

required to have its own beneficial interest in the loan. Accordingly, Plaintiff

cannot establish a UDAP claim based on this contention.

Plaintiff also appears to advance a variation of the "show me the note"

argument, which has been routinely rejected by district courts throughout the Ninth

Circuit. See, e.g., Diessner v. Mortgage Electronic Registration Systems, 618 F.

Supp. 2d 1184, 1187 (D. Ariz. 2009); Wallis v. Indymac Fed. Bank, 717 F. Supp.

2d 1195, 1200–01 (W.D. Wash. 2010); Mansour v. Cal-Western Reconveyance

Corp., 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009).[8] Therefore, insofar as

---

[8]Although the Court does not cite unpublished opinions as precedent, the
following cases from the District of Hawaii also reject the "show me the note"
argument: Krakauer v. IndyMac Mortg. Servs., 2010 WL 5174380, at *9 (D. Haw.
Dec. 14, 2010); Brenner v. Indymac Bank, F.S.B., 2010 WL 4666043, at *7 (D.
Haw. Nov. 9, 2010); Angel v. BAC Home Loan Servicing, 2010 WL 4386775, at
*10 (D. Haw. Oct. 26, 2010).

Plaintiff's UDAP claim is based on this argument, the Court concludes that it lacks merit.

Plaintiff's argument regarding its entitlement to a UCC administrative remedy also lacks merit. In the SAC, Plaintiff asserts that OneWest "is in default of the UCC administrative remedy with a penalty in the amount of $4,000,000 for acquiescing and failing to provide documented proof of [a] valid claim against his property." (SAC ¶ 62.) The documents submitted by Plaintiff in support of this claim indicate that Plaintiff is seeking an administrative remedy pursuant to 28 U.S.C. §§ 1333, 1337, 2461, and 2463. (Docs. # 215-2, 215-3, 215-4.) Since these statutes have no application to the facts of this case, this allegation does not constitute grounds for relief against Defendant. See 28 U.S.C. § 1333 (establishing exclusive admiralty jurisdiction of the U.S. District Courts); id. § 1337 (establishing jurisdiction in antitrust cases); id. § 2461 (establishing fines and penalties for violations of acts of Congress); and id. § 2463 (addressing property taken under revenue law).

In sum, the Court concludes that each of the allegations advanced by Plaintiff in support of his UDAP claim either has no legal merit or lacks evidentiary support sufficient to create a genuine issue of material fact for trial.

Accordingly, OneWest is entitled to judgment as a matter of law with respect to Plaintiff's sole cause of action.

CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant OneWest's Motion for Summary Judgment (doc. # 209) and **DENIES** Plaintiff's Motion for Summary Judgment (doc. # 208).  The April 10, 2012 trial date is hereby **VACATED** and all pending Motions in Limine (docs. ## 182–186) are **DENIED AS MOOT**.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 20, 2012.

_____
David Alan Ezra
United States District Judge

White v. IndyMac Bank, et al., CV No. 09-00571 DAE-KSC; ORDER: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT